STATE OF NORTH CAROLINA ex rel. COMMISSIONER OF INSUR-
ANCE AND THE NORTH CAROLINA AUTOMOBILE RATE
ADMINISTRATIVE OFFICE v. STATE OF NORTH CAROLINA
ex rel. ATTORNEY GENERAL

## No. 7210INS731

(Filed 25 October 1972)

**Insurance § 79.1— automobile liability insurance rates — failure to make
necessary findings — remand**

Automobile liability insurance rate case is remanded to the Com-
missioner of Insurance with direction that specific findings of fact
be made, upon substantial evidence, as to (1) the earned premiums
to be anticipated by companies operating in North Carolina during
the life of policies to be issued in the near future, (2) the reasonably
anticipated loss experience during the life of said policies, (3) the
reasonably anticipated operating expenses in said period, and (4)
the percent of earned premiums which will constitute a fair and
reasonable profit in that period.

APPEAL by Attorney General, intervenor, from decision and
order of Commissioner of Insurance entered 26 May 1972.

On 1 July 1971 the North Carolina Automobile Rate Ad-
ministrative Office (Rate Office) made a filing with the Com-
missioner of Insurance (Commissioner), pursuant to G.S. 58-
248, which filing proposed a schedule of increased rates on pri-
vate passenger automobile liability insurance in the amount of
16.4% for bodily injury insurance and 29.0% for property
damage insurance, making an overall or average increase of
21.4%. On 21 July 1971, the Commissioner entered an order,
based on 1 July 1970 filing, increasing liability insurance
rates on private passenger automobiles 7.7%; as a result of
this order the Rate Office, by amendment, reduced its request
for an increase in rates to 13.9%.

After due advertisement as required by law, the Commis-
sioner conducted a hearing on said 1971 filing on 16 September
1971 and thereafter recessed and continued the hearing on 29
and 30 September, 4 and 28 October, 22 November, and 14 De-
cember 1971, and 25 January, 10, 11, and 21 February, 15
March, and 18 and 26 April 1972 at which time the hearing
was concluded.

On 23 August 1971 the Attorney General, as authorized by
G.S. 114-2(8)(a), intervened in behalf of "the insurance con-
suming public," and denied that any revision of private pas-

senger automobile liability insurance rates was justified at that time.

At the hearing the Rate Office presented evidence consisting of numerous exhibits and the testimony of some six witnesses including its General Manager, Paul Mize. The Commissioner called as a witness Robert E. Holcombe, Assistant Fire and Casualty Actuary of the North Carolina Department of Insurance. The Attorney General offered testimony by J. Finley Lee, Associate Professor of Business Administration at U.N.C.-C.H., and William E. L. Hack, Claims Adjuster with the N. C. Department of Justice.

In his lengthy order dated 26 May 1972, the Commissioner, after preliminary recitals, made numerous findings of fact and conclusions, ordered that private passenger automobile liability insurance be increased by 8.9%, reduced by reason of Federal Price Control regulations to 7.4% ; the rate increase to be effective on the earliest practicable date that the increase can be placed into effect by the Rate Office.

The Attorney General excepted to the Commissioner's order and gave notice of appeal.

*Attorney General Robert Morgan by Jean A. Benoy, Deputy Attorney General and Benjamin H. Baxter, Jr., Associate Attorney, for appellant intervenor.*

*Allen, Steed and Pullen by Arch T. Allen for North Carolina Automobile Rate Administrative Office, appellee.*

*Hugh R. Owen, Staff Attorney, for North Carolina Department of Insurance, appellee.*

BRITT, Judge.

The case of *In re Filing by Automobile Rate Office,* 278 N.C. 302, 180 S.E. 2d 155 (1971), hereinafter referred to as Automobile Rate Office case, involved an appeal from an order of the Commissioner approving an increase of rates on private automobile liability insurance based on a 1 July 1969 filing by the Rate Office. In the opinion in that case, Chief Justice Bobbitt sets forth fully the statutory framework and procedures in North Carolina governing regulation of private automobile liability insurance rates applicable at that time. No worthwhile

purpose would be served in restating the statutory framework and procedures set forth in that opinion but a statement as to pertinent 1971 amendments to our insurance laws is in order.

Chapter 1115 of the 1971 Session Laws rewrote G.S. 58-248 and the rewrite contains the following pertinent provisions:

" . . . The Commissioner of Insurance in considering any rate compiled and promulgated by the bureau may take into consideration the earnings of all companies writing automobile liability insurance in this State realized from the investment of unearned premium reserves and investments from loss reserves on policies written in this State. The amount of earnings may in an equitable manner be included in the rate-making formula to arrive at a fair and equitable rate.

In determining the necessity for an adjustment of rates the Commissioner shall give consideration to past and prospective loss experience, including the loss-trend and other relevant factors developed from the latest statistical data available; to such relevant economic data from reliable indexes which demonstrate the trend of costs relating to the line of automobile insurance for which rates are being considered and to such other reasonable and related factors as are relevant to the inquiry. The bureau in promulgating and fixing rates shall consider the same factors and shall prepare and present such information, data, indexes and exhibits with rate filings.

The Commissioner shall approve proposed changes in rates, classifications or classification assignments to the extent necessary to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest. Proposed rates shall not be deemed unreasonable, inadequate, unfairly discriminatory or not in the public interest, if such proposed rates make adequate provision for premium rates for the future which will provide for anticipated loss and loss adjustment expenses, anticipated expenses attributable to the selling and servicing of the line of insurance involved and a provision for a fair and reasonable underwriting profit."

Chapter 703 of the 1971 Session Laws provides, among other things, that from and after 1 January 1972 appeals from the Commissioner of Insurance "pursuant to G.S. 58-9.4" would be to the Court of Appeals (rather than to the superior court).

The Attorney General states his first contention on this appeal as follows: "The Commissioner of Insurance erred in not finding facts upon substantial evidence sufficient to support his ultimate finding or conclusion that the present rate level for private passenger automobile liability insurance is inadequate."

The case of *In re Filing by Fire Insurance Rating Bureau,* 275 N.C. 15, 165 S.E. 2d 207 (1969), hereinafter referred to as Fire Insurance Rating Bureau case, involved an appeal from an order of the Commissioner denying adjustments in certain premium rates on fire insurance policies issued in North Carolina. (The net effect of the "adjustments" was to allow an increase in rates.) In the unanimous opinion Justice Lake quoted statutes providing for the creation and operation of the Fire Insurance Rating Bureau and the powers and obligations of the Commissioner with respect to fire insurance premium rates. It appears that the purpose and duties of the North Carolina Fire Insurance Rating Bureau (Rating Bureau) created by G.S. 58-125 are quite similar to the purpose and duties of the North Carolina Automobile Rate Administrative Office (Rate Office) created by G.S. 58-246, with the Rating Bureau dealing with fire insurance rates and the Rate Office dealing with automobile bodily injury and property damage insurance rates.

In the *Fire Insurance Rating Bureau* case, at page 30, the Court quoted from G.S. 58-131.2 as follows:

"The Commissioner is hereby empowered to investigate at any time the necessity for a reduction or increase in rates. If upon such investigation it appears that the rates charged are producing a profit in excess of what is fair and reasonable, he shall order such reduction of rates as will produce a fair and reasonable profit only.

If upon such investigation it appears that the rates charged are inadequate and are not producing a profit which is fair and reasonable, he shall order such increase of rates as will produce a fair and reasonable profit."

In the *Rate Office* case, pp. 307-308, the court quoted from G.S. 58-248.1 as follows:

"Whenever the Commissioner, upon his own motion or upon petition of any aggrieved party, shall determine, after notice and a hearing, that the rates charged or filed on any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory, or otherwise not in the public interest, or that a classification or classification assignment is unwarranted, unreasonable, improper or unfairly discriminatory he shall issue an order to the bureau directing that such rates, classifications or classification assignments be altered or revised in the manner and to the extent stated in such order to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory, and in the public interest."

From the quoted statutes, it appears that at the times the cited cases were decided, the Commissioner had similar statutory guidelines in considering adjustment of fire insurance rates and adjustment of automobile bodily injury and property damage insurance rates. Regarding fire insurance rates, the Commissioner was authorized to order "such increase of rates as will produce a fair and reasonable profit;" regarding automobile insurance rates, he was required to order "rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory and in the public interest." The 1971 amendments make the guidelines even more similar when they provide that "[p]roposed rates shall not be deemed unreasonable, inadequate, unfairly discriminatory or not in the public interest, if such proposed rates make adequate provision for premium rates for the future which will provide for anticipated loss and loss adjustment expenses, anticipated expenses attributable to the selling and servicing of the line of insurance involved and a provision *for a fair and reasonable underwriting profit.*" (Emphasis added.)

In the *Fire Insurance Rating Bureau* case, the Rating Bureau appealed from an order of the Commissioner denying an increase in rates. In ordering the case remanded to the Commissioner for further proceedings, the Supreme Court said (pp. 39-40):

"The ultimate question to be determined by the Commissioner is whether an increase in premium rates is necessary in order to yield a 'fair and reasonable profit' in the immediate future (i.e., treating the Bureau as if it were an operating company whose experience in the past is the composite of the experiences of all of the operating companies), and, if so, how much increase is required for that purpose. This cannot be determined without specific findings of fact, upon substantial evidence, as to (1) the reasonably anticipated loss experience during the life of the policies to be issued in the near future, (2) the reasonably anticipated operating expenses in the same period, and (3) the percent of Earned Premiums which will constitute a 'fair and reasonable profit' in that period."

We are unable to distinguish the requirement for specific findings of fact called for in the *Fire Insurance Rating Bureau* case and those required in the instant case where the findings or lack of findings are *directly challenged.* Appellees argue that this case is controlled by the more recent *Automobile Rate Office* case (278 N.C. 302) in which the findings of fact and conclusions of the Commissioner were very similar to those in the instant case. In the *Automobile Rate Office* case, the court said (p. 315) :

"The case is before us upon the ten assignments of error set forth in the Attorney General's petition for review by the Superior Court of the Commissioner's order of December 18, 1969. These assignments challenge all findings of fact in the Commissioner's order on the ground they were based wholly or principally on incompetent testimony and unauthenticated and otherwise incompetent documentary evidence.

* * * The Attorney General's petition for review of the Commissioner's order of December 18, 1969, brought the matter to the Superior Court for hearing on the assignments of error set forth in that petition. We are concerned only with that portion of Judge Bailey's judgment which overrules these assignments of error and affirms the Commissioner's order."

A close study of the *Automobile Rate Office* case leads us to conclude that a majority of the court felt that the question

whether there were sufficient findings of fact to support the Commissioner's conclusions and order was not properly before the court in that case. The primary question before the court in that case was whether the provisions of G.S. 143-317, 318, apply to hearings before the Commissioner of Insurance. The court held that they do not and did not address itself in any way to the question presently before us. We do not think the opinion in the *Automobile Rate Office* case overruled the opinion in the *Fire Insurance Rating Bureau* case.

Under mandate of the *Fire Insurance Rating Bureau* case, we conclude that the decision and order of the Commissioner in the instant case must be vacated and the case remanded to the Commissioner for further proceedings and findings of fact as required by the *Fire Insurance Rating Bureau* case. A careful review of the record in this case including the Commissioner's decision and order reveals that the Commissioner considered proper evidence, data and statistics, particularly that reflecting actual underwriting experience of companies writing private passenger automobile insurance in North Carolina. The decision and order recites that "for rate making purposes, the Statutory Bureau is to be regarded as it were ONE insurance company and the only one operating in North Carolina and as if it had all of the premium, loss, and expense experience of all the companies writing private passenger automobile insurance within the State."

The decision and order further recites that it has been long standing administrative practice to construe G.S. 58-248 "to mean that proposed rates would be proper for future use in North Carolina if they provided for anticipated losses, loss adjustment expenses, and other expenses of the companies attributable to that line of insurance business and included in the formula an amount which would provide for a fair and reasonable underwriting profit to the companies." The Commissioner found as a fact that the rates proposed in the 1 July 1971 filing are based upon the latest available premium and loss statistics for accident years 1968 and 1969, weighted equally; and that the actual North Carolina underwriting experience data shows that the companies sustained an underwriting loss on automobile liability insurance in North Carolina for the years 1967, 1968 and 1969. The order and decision further recites that the Commissioner in determining a fair and reasonable profit took into consideration investment income realized from

unearned premium reserves and from loss reserves as he was authorized to do under the 1971 amendments. In all probability the decision of the able and conscientious Commissioner is fair to all parties and is in the public interest; however, the appellate courts cannot properly review his decision and order without the findings of fact required in the *Fire Insurance Rating Bureau* case.

On remand the Commissioner will make specific findings of fact, upon substantial evidence based on underwriting experience in North Carolina, as to (1) the earned premiums to be anticipated by the company *(i.e.,* all companies operating in North Carolina considered as one) during the life of policies to be issued in the near future, (2) the reasonably anticipated loss experience during the life of said policies, (3) the reasonably anticipated operating expenses in said period, and (4) the percent of earned premiums which will constitute a fair and reasonable profit in that period.

With respect to the sufficiency of evidence to support an order of the Commissioner adjusting insurance premiums, it would appear from the *Automobile Rate Office* case (278 N.C. 302, 320) that in addition to considering evidence that does not meet the tests required for the admissibility of evidence over objection thereto in a trial in a superior or district court, the Commissioner, "in making what must be considered in large measure a policy or judgment decision," may utilize "his own continuous study and knowledge of changing conditions."

We have carefully considered the other contentions argued in the Attorney General's brief but find them to be without merit.

For the reasons stated the decision and order appealed from is vacated and this case is remanded to the Commissioner for further proceedings consistent with this opinion.

Remanded.

Chief Judge MALLARD and Judge BROCK concur.